**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AEQUUS TECHNOLOGIES, LLC, AEQUUS TECHNOLOGIES CORP., RICHARD SCHATZBERG and LEMUEL TARSHIS, <br><br> Plaintiffs, <br><br> v. <br><br> gh, LLC, DAVID SCHLEPPENBACH and JOSEPH P. SAID, <br><br> Defendants. | **OPINION** <br><br> Civ. No. 03-5139 (WHW) |

**Walls, Senior District Judge**

Plaintiffs Aequus Technologies, LLC, Aequus Technologies Corp., Richard Schatzberg and Lemuel Tarshis bring these claims alleging that Defendants gh, LLC, David Schleppenbach and Joseph P. Said breached a partnership agreement and agreement to merge. Defendants now move for summary judgment on these claims. The Court grants summary judgment dismissing the claims of a partnership agreement and agreement to merge, the claim under the New Jersey Oppressed Shareholders Statute and the claim for compensatory damages of $250,000.

**STATEMENT OF FACTS**

Beginning around 2001, Plaintiff Aequus Tech, LLC and Defendant gh, LLC engaged in talks over the prospect of collaborating on the provision of services to people with disabilities. On June 12, 2002, Aequus and gh entered into a formal management contract (Ex. J). On December

**NOT FOR PUBLICATION**

17, 2002, Aequus and gh executed a Letter of Intent for Plaintiff to acquire assets of Defendant (Ex. M). On May 1, 2003, Aequus and gh entered into a Joint Marketing, Sales and Business Development Agreement (Ex. L). This agreement superceded the formal management contract.

gh had earlier negotiated an agreement with a third party, Tech Sellers, to repurchase Tech Sellers 49% interest in gh through an Unit Redemption Agreement in Jan. 1, 2003 (Ex. E). gh was off schedule in payments to Tech Sellers. To help Defendants, Plaintiffs allegedly made a $250,000 contribution on gh's behalf to Tech Sellers (Ex. C and F). This contribution to Tech Sellers was memorialized in a deposit agreement on May 22, 2003, providing that the $250,000 contribution would be credited toward the deposit payments by Defendant gh to Tech Sellers outlined in the Unit Redemption Agreement. However, there was no written agreement between gh and Aequus in regard to the $250,000 contribution.

Aequus paid Schleppenbach, one of the owners of gh, three $5,000 payments in order, as Plaintiff alleges, to buy out his interest in gh. There was no written agreement pertaining to the three $5,000 payments.

### Aequus' position

Aequus alleges that an agreement to enter into a business partnership between Plaintiff and Defendant was formed orally in mid-2002. The parties then defined the rules in the partnership and memorialized their roles in the partnership through a partnership memorandum at a meeting on August 5-6, 2003 (Schatzberg Decl. ¶10). The goal of this partnership was either to have Aequus acquire gh or merge into one entity (Schatzberg Decl. ¶13). Aequus asserts that the June 12, 2002 management agreement was separate from the oral partnership agreement and was in furtherance

2

**NOT FOR PUBLICATION**

of the partnership agreement (Schatzberg Decl. ¶33; Ex. K). Aequus also asserts that the Joint Marketing, Sales and Business Development Agreement of May 2003 did not supercede the partnership agreement, but rather supplemented it (Ex. K).

Furthermore, Aequus posits that the Joint Marketing, Sales and Business Development Agreement did not reflect or govern any of the capital contributions ($250,000 and three $5,000 contributions) made by Aequus to the alleged partnership (Ex. J). These capital contributions occurred as a result of an oral agreement between Aequus and gh in furtherance of the distinct partnership agreement (Schatzberg Decl.¶ 63; Ex. CC).

According to Aequus, the two parties entered into a memorialized agreement to merge in July 2003 (Exhibit N and BB). Aequus claims that on September 2003, gh breached the Joint Marketing, Sales and Business Development Agreement (Pls' opp'n br., pg. 19).

### gh's position

gh alleges that there was no partnership agreement and that the Aug. 5-6, 2003 meeting's purpose was to discuss the roles of the parties *if* a merger happened. Even if there were an oral partnership agreement, gh claims, it was superseded by the Joint Marketing, Sales and Business Development Agreement.

According to gh, the $250,000 and three $5,000 contributions were not governed by an oral agreement because the Joint Marketing, Sales and Business Development Agreement's terms stated that any subsequent agreement would need to be in writing. (Schatzberg Decl. ¶63; Ex. CC). In addition, the $250,000 payment to Tech Sellers was not made pursuant to the partnership agreement, but is entirely governed by the deposit agreement between Aequus and Tech Sellers, to which gh

**NOT FOR PUBLICATION**

is not a party. The three $5,000 payments made to Schleppenbach also were not made in furtherance of the partnership agreement, but rather made as a nonrefundable deposit towards Aequus' attempt to merge with gh (Ex. CC).

gh claims that an agreement to merge was never formed. The handwritten notes used by Schatzberg to establish an existence of a memorialized agreement to merge only conveyed an intention to merge rather than a commitment to merger (See Ex. N). Furthermore, gh asserts that the merger described in the Letter of Intent was contingent on Aequus being able to raise money and satisfy certain elements in the note, which Aequus was unsuccessful in accomplishing (Ex. AA).

gh also argues that it was Aequus who breached the Joint Marketing, Sales and Business Development Agreement (Defs' mot. br., pg. 8).

## PROCEDURAL HISTORY

Aequus filed a complaint against gh in the United States District Court on October 29, 2003. Aequus filed an amended complaint on August 26, 2004, raising claims for breach of contract, breach of good faith and fair dealing, misrepresentation, negligent misrepresentation, breach of fiduciary duty, breach of duty of loyalty, tortious interference with contract, tortious interference with prospective economic advantage, misappropriation, unjust enrichment, reasonable expectation of compensation, fraudulent conveyance, violations of New Jersey Oppressed Shareholder statute and violation of the Uniform Partnership Act.

gh filed an answer to the complaint with counterclaims on January 22, 2004. gh filed an answer to the amended complaint on October 11, 2004. gh also filed an amended counterclaim raising claims for breach of contract, breach of implied covenant of good faith and fair dealing,

4

**NOT FOR PUBLICATION**

fraudulent inducement, negligent misrepresentation, tortious interference with prospective economic advantage, disgorgement of compensation and other amounts, violation of Indiana's Uniform Trade Secret Act, common law misappropriation of trade secrets, fraud and unfair competition against Aequus.

gh made a motion on October 8, 2007 seeking partial summary judgment on Aequus' claim that the parties entered into an oral partnership agreement and oral merger agreement. gh's motion also seeks the dismissals of Aequus' claim under the New Jersey Oppressed Shareholder Statute and Aequus' claim for damages under the doctrine of election of remedies. In a separate partial summary judgment motion made on the same day, gh sought the dismissal of Plaintiff's claim of $250,000 as compensatory damages for the breach of the partnership agreement.

**STANDARD OF REVIEW**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See id. at 248. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 318 (1986).

**NOT FOR PUBLICATION**

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, a nonmovant must present more than a mere scintilla of evidence in his favor. Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

## DISCUSSION

**1. Partnership Agreement**

"The question as presented to this court is one of law and not one of fact. The facts are really not in dispute. The contest concerns the inferences of law to be drawn from the facts..." Fenwick v. Unemployment Comp. Comm'n, 133 N.J.L. 295, 300 44 A.2d 172 (E. & A. 1945). The alleged partnership agreement does not meet the legal criteria required by New Jersey common law. The lack of a valid partnership agreement renders any material disputes of facts related to the specifics of the partnership agreement moot.

**NOT FOR PUBLICATION**

Under New Jersey's Uniform Partnership Law, a partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit." N.J.S.A. 42:1-6. A partnership is created when "persons join together their money, goods, labor or skill for the purpose of carrying on a trade, profession, or business, wand and where there is a community of interest in the profits or losses." Farris v. Farris Engineering Corp, et al., 81 A.2d 731, 737 (1951). The burden of establishing a valid partnership exists falls onto the party that is alleging it. Fenwick v. Unemployment Comp. Comm'n 133 N.J.L. at 300. New Jersey courts have applied the factors laid out in Fenwick v. Unemployment Comp. Comm'n in order to determine whether a partnership agreement is valid. 133 N.J.L. at 297-99; see also Eagan v. Gory, 2009 U.S. Dist. LEXIS 14628 1, 17 (D.N.J. Feb. 24, 2009). These factors include the intent of the parties, right to share in profits, obligation to share in losses, ownership and control of the partnership property and business, community of power in administration and reservation, language of the agreement, conduct of the parties toward third persons and the rights of the parties on dissolution. Fenwick 133 N.J.L. at 297-99.

State and federal decisions indicate that if a number of factors are not met by the facts of the case, there is no partnership agreement. See Fenwick 133 N.J.L. at 300; Presten v. Sailer, 225 N.J. Super. 178 (1988) (finding that parties did not enter into a partnership because they did not intend to share profits); Amer. Fire & Casualty Insurance Co. et al. v. Manzo et al., 347 N.J. Super. 100, 107 (2002) (finding that parties did not enter into a partnership because most of the Fenwick factors were not met; Eagan 2009 U.S. Dist. LEXIS 14628 at 17 (finding that parties did not enter into a partnership because most of the Fenwick factors were not met). In Kozlowski v. Kozlowski, the

**NOT FOR PUBLICATION**

Superior Court of New Jersey found that "although these requirements [the partnership factors] may be reduced as regards married persons for income tax purposes... they must be met by the complainant here if she is to prevail on this theory of relief." Kozlowski v. Kozlowski, 164 N.J. Super. 162, 171(1978) (citing Lang v. Hexter, 137 N.J. Eq. 100 (Ch. 1945), aff'd 138 N.J. Eq. 478 (E. & A. 1946)). Kozlowski's application suggests that parties who claim business partnership in New Jersey must present evidence to support the existence of each of the factors in order to establish a partnership. Because Plaintiffs fail to present any evidence to satisfy a number of Fenwick factors under law, there is no partnership.

### A. Intent

Plaintiffs allege that the parties intended to enter into a partnership agreement. Plaintiffs point to an executive meeting which took place in gh's Indiana location, where the two sides formally appointed officers from both companies to positions in the partnership (Schatzberg Decl. ¶14). In addition Andrew Forti, who was the director of marketing for gh, testified that he was told by his superiors that Aequus and gh had formed a partnership (Schatzberg Decl. ¶16; Ex. B).

Defendants counter that the Joint Marketing, Sales and Business Development Agreement's integration clause is evidence that the parties never intended to form a partnership agreement (Ex. D at 8a.) According to the Defendants, the Joint Marketing, Sales and Business Development Agreement superseded any partnership agreement and was the only agreement that pertained to the parties relationship with one another. (Pls' opp'n br., pg. 19). These assertions are irrelevant to the determination of the issue of intent to form a partnership agreement because the alleged partnership agreement took place before the Joint Marketing, Sales and Business Development Agreement. On

8

**NOT FOR PUBLICATION**

the basis of this observation, Plaintiff's evidence of intent is uncontested and favors the existence of a partnership agreement.

### B. Right to Share in Profits

Plaintiffs present evidence from Richard Schatzberg's declaration that Aequus and gh agreed that they would share in the "rewards" of the partnership (Schatzberg Decl. ¶12). A reasonable factfinder could deduce that profits are a certain type of "reward" that the companies would share in a business relationship. However, there is no other evidence, direct or circumstantial, of an intent to share or any specific instances where profits were shared. Without any such evidence to substantiate the claim, the statement by Schatzberg does not satisfy Plaintiffs' burden to show that an agreement was formed. (Shields, 254 F.3d at 481).

### C. Obligation to share in the losses

Plaintiffs state that the two companies agreed that they would share in the risks of the partnership (Schatzberg Decl. ¶12). Exactly what risks are not specified by Plaintiffs. Plaintiffs also argue that they met their obligation to share in the losses by making contributions of over $500,000 to the partnership (Pls' opp'n br., pg. 29). However, these contributions are not in and of themselves evidence that losses would be equally shared. The obligation to share in the losses would be found if there were direct or circumstantial evidence that the parties had an obligation to share in the losses or of the parties actually sharing in losses. Plaintiffs' claims remain bare allegations. This Fenwick factor favors the finding of no partnership.

### D. Ownership and Control of the Partnership Property and Business

9

**NOT FOR PUBLICATION**

Plaintiffs have provided no substantive evidence as to how the two companies owned or controlled partnership property and business. Although Schatzberg states that Aequus owned 50 percent of the partnership assets, there is no direct or circumstantial evidence of ownership or of property transferred by either party (Ex. A). There is also no declaration of assets except for a vague statement by Schatzberg that the assets included "management, capital and various things." (Id.) Again, Plaintiffs fail to demonstrate an agreement. This Fenwick factor favors a finding of no partnership.

### E. Community of Power in Administration and Reservation in the Partnership

According to Plaintiffs, Schatzberg and Tarshis of Aequus as well as Schleppenbach of gh were appointed to officer positions in the partnership (Schatzberg Decl. ¶14; Ex. I). This assertion is supported by the alleged partnership memorandum, which contains the positions of the individuals (Ex. I). Defendants do not present evidence to cast this fact in dispute. This Fenwick factor favors finding a partnership agreement.

### F. Partnership Agreement Language

Plaintiffs cannot use the language of the partnership agreement as definite support for the existence of the agreement because the alleged agreement was not substantially or formally written. (See Ex. I). Defendants do not provide alternative language to contest Plaintiffs' claim of a partnership agreement because Defendants contend that no such agreement was ever created. The lack of language defining the relationship between parties favors a finding of no partnership agreement.

**NOT FOR PUBLICATION**

### G. Conduct of the Parties toward Third Parties

Conduct of the parties toward third parties can also provide evidence of a partnership. John Kemp, a third-party lawyer, testified that he heard from Schleppenbach, Said, Schatzberg and Tarshis that they had formed a partnership between Aequus and gh (Schatzberg Decl. ¶ 51; Ex. Q). In addition, a presentation done by gh to Purdue University contained the phrase "Recently Partnered with Aequus Technologies" (Schatzberg Decl. ¶ 52; Ex. R). gh also ordered business cards reflecting the officer positions in the partnership (Schatzberg Decl. ¶53; Ex. S). Schleppenbach testified that he referred to Aequus and gh as "partners" to third parties (Schatzberg Decl. ¶ 54; Ex. T). gh's website had a picture of Schatzberg and identified him as "CEO of gh business partner" (Schatzberg Decl. ¶55; Ex. U). Aequus and gh created and sold a product that had on its cover, "a partnership between gh, LLC and Aequus Technologies, LLC" (Schatzberg Decl. ¶57; Ex. W). Defendants do not present any evidence that disputes these facts. While it is not clear if these instances were meant to reflect a strategic rather than a legal "partnership", this Fenwick factor favors the finding of a partnership.

### H. Rights of the Parties on Dissolution

There is no evidence provided by Plaintiffs that defines the rights of the parties on dissolution of the partnership agreement. There is no direct or circumstantial evidence of the rights of the parties on dissolution or supporting the existence of such rights. This factor favors the finding of no partnership.

A substantial majority (5) of the Fenwick factors are not met, a minority (3) of the factors help establish evidence of a partnership agreement. Applying the Kozlowski rationale quantitatively

11

**NOT FOR PUBLICATION**

and qualitatively, there is no legal basis for a partnership agreement. Kozlowski, 164 N.J. Super. at 171 (citing Lang 137 N.J. Eq.).

### 2. Agreement to Merge

Defendants disputes the existence of an agreement to merge. It is important to note that an agreement to merge is a separate document from a merger agreement because an agreement to merge demonstrates a binding intent to merge in the future, whereas a merger agreement is the actual document that merges the two companies. See 1-2 Corbin on Contracts § 2.8 (2009) (explaining the difference between a formal contract and an agreement to agree or preliminary agreement).

Plaintiffs argue that there was an oral agreement memorialized in July 2003 that bound the parties to merge. Plaintiffs do not identify what kind of agreement the agreement to merge constitutes. The nature of the agreement and the evidence offered by Plaintiffs appear to suggest that Plaintiffs are claiming that the agreement to merge was a binding preliminary agreement rather than a formal merger contract. Id. The elements of a formal contract, that of consideration and offer/acceptance, will not be considered because they are not alleged by Plaintiffs. The Court will focus instead on whether this agreement to merge was a binding preliminary agreement.

#### A. Intent to agree to merge

New Jersey courts have looked to parties' intent to discern whether a preliminary agreement is binding. See Morales v. Santiago, 217 N.J. Super. 496, 502 (1987), see also A. Valey Engineers, Inc. v. Rouse Co., No. 86-1597, 1989 U.S. Dist. LEXIS 9324 (1989); Starting Nine, Inc. v. Highgate Products, Inc., No. 92-2417, 1993 U.S. Dist. LEXIS 8593 (D.N.J. 1993); West v. IDT Co., No. 01-

**NOT FOR PUBLICATION**

4372, 2008 U.S. Dist. LEXIS 21595 (D.N.J. 2008). In Morales v. Santiago, the Superior Court of New Jersey stated that

> [I]f the parties intend to be bound by their preliminary agreement and view the later written contract as merely a memorialization of their agreement, they are bound by the preliminary agreement. On the other hand, if the parties intend that their preliminary agreement be subject to the terms of the later contract, they are not bound by their preliminary agreement.

Morales, 217 N.J. Super. at 502. In Comerata v. Chaumont, Inc., the Superior Court of New Jersey noted that "parties may orally, by informal memorandum, or by both agree upon all the essential terms of a contract and effectively bind themselves... even though they contemplate the execution later of a formal document to memorialize their undertaking... the ultimate question is one of intent." Comerata v. Chaumont, Inc., 52 N.J. Super. 299, 305, (App. Div. 1956) (citing Stuart & Wood Inc., v. Palisades, et al.., Corp., 109 N.J. Eq. 401 (Ch. 1931)).

To determine the parties' intent to be bound, courts have referred to "a number of elements in the evidential panorama underlying a factual finding of intent and enforceability." West at 10 (quoting Berg Agency v. Sleepwood-Willingboro,136 N.J. Super. 369, 374 (App. Div. 1975)). These elements include the "document itself and the underlying facts relating to the negotiations leading to its execution." Id. (quoting Berg,136 N.J. Super at 375). The Morales court further observed that "absence of essential terms from a preliminary agreement is persuasive evidence that the parties did not intend to be bound by it." Morales, 217 N.J. Super. at 502. In addition, courts have looked to whether performance that was agreed to by the parties was undertaken (West citing Comerata, 52 N.J. Super. at 306), the prior dealings between the parties, (Id at 12 citing Moran v. Fifteenth Ward Bldg. & Loan Ass'n, 131 N.J. Eq. 361, 25 A.2d 426, 430 (N.J. Ch. 1942)), industry practice (Id at 12, (citing Marilyn Manson, Inc. v. N.J. Sports & Exposition Auth., 971 F. Supp. 875, 889 (D.N.J.

**NOT FOR PUBLICATION**

1997))) and the nature and complexity of the transaction (Id at 12 (citing Surf & Turf Dev., LLC v. Cestone, 2006 WL 3025512, at *2 (N.J. Super. App. Div. Oct. 26, 2006)).

Plaintiffs point to the Letter of Intent that the parties executed in December 2002 as evidence that the parties had an intent to merge. (Schatzberg Decl. ¶42; Ex. M). Plaintiffs also assert that the handwritten note created at a meeting in July 2003 is evidence that the parties had memorialized this agreement to merge. (Schatzberg Decl. ¶46; Ex. N). According to Plaintiffs, the alleged agreement states that the parties had agreed to "Merge 50-50 Sooner the Better." (Id.) Plaintiffs use testimony from Defendant Said that the parties had reached an agreement at the July 2003 meeting as further support (Schatzberg Decl. ¶61; Ex. AA) ("Q: And that's the conference when you and Rich sat down and reached an agreement on a piece of paper? A: [Said's response] Yes."). Plaintiffs also show through Said's testimony that Said had the authority to negotiate the agreement on behalf of himself, Schleppenbach and gh. (Id.). Plaintiffs additionally rely on their own testimony that "[t]his [Ex. N] is a merger. This is the terms of an agreement to merge." as evidence that the document was a binding agreement (Schatzberg Decl. ¶62; Ex. BB).

Plaintiffs' evidence of the parties intent to be bound by the alleged agreement to merge at the July 2003 is insufficient. In Flanagan v. National Sweeteners, the District Court found that there was insufficient evidence of an intention to be bound despite the fact that the defendant made statements indicating that the parties had agreed to a transaction. 96-cv-2633 (DRD), 1997 U.S. Dist. LEXIS 24182, *18 (D.N.J. Aug. 17, 1997). Here, Plaintiffs' reliance on Said's affirmation of "an agreement on a piece of paper" is even weaker since it is unclear whether Said is affirming a general agreement to be bound or simply agreement on the specific terms written down at the July 2003 meeting. In comparison to the record before the court in Flanagan, Plaintiffs' evidence is

14

**NOT FOR PUBLICATION**

equally, if not more, lacking since the only clear testimony regarding intention to be bound is Schleppenbach's self-serving testimony. The insufficiency of Plaintiffs' evidence is even more apparent in light of the fact that, in the 6 paragraphs outlining its argument in support of the oral agreement to merge, Plaintiff does not point to any evidence that the parties acted in any way to carry out the alleged oral agreement to merge.

Plaintiffs also fail to present evidence that the alleged agreement to merge is consistent with earlier dealings between the parties. Plaintiffs recognize that before the alleged oral agreement to merge at the July 2003 meeting "on December 17, 2002, the parties executed a Letter of Intent... which first reflected the parties desire to either merge or proceed with an acquisition." The Letter of Intent contained key terms such as the appointment of officers, allocation of assets and the capital requirements that Aequus had to satisfy prior to merger. By contrast, plaintiffs fail to present any argument as to why the parties did not draft and execute a similarly detailed document for the agreement to merge at the July 2003 meeting. Plaintiffs also fail to explain why the parties would enter into an oral agreement to merge when the parties had already negotiated a detailed Letter of Intent.

The Court finds that there was no agreement to merge. Plaintiffs fail to present the requisite evidence to demonstrate an intent to be bound, such as the presence of all the essential terms, partial performance of the agreement, or consistency with earlier dealings of the parties. The limited evidence presented by Plaintiffs consists wholly of vague or self-serving statements that do not satisfy their burden of showing that the parties intended to be bound by the negotiations at the July 2003 meeting.

**NOT FOR PUBLICATION**

**3. $250,000 claim for damages**

Because there was no partnership agreement, the Court finds that the $250,000 amount Plaintiffs seek as compensation for damages suffered from a breach of the alleged partnership agreement to be moot. The Court grants the motion of partial summary judgment dismissing the $250,000 claim for damages.

**4. New Jersey Oppressed Shareholder Statute Claim**

The Court also dismisses Plaintiffs' claim under the New Jersey Oppressed Shareholder Statute, N.J.S.A. 14A:12-7. According to N.J.S.A. 14A:12-7(c), "an action may be brought under this section by one or more directors or by one or more shareholders." The Court finds that Plaintiffs have not established standing to bring a claim under N.J.S.A. 14A:12-7 because Plaintiffs are neither directors nor shareholders of gh. The Court has determined that there was no partnership or merger between the parties. It would follow that Plaintiffs Schatzberg and Tarshis of Aequus were not directors of gh since there was no combined Aequus-gh entity. There is no evidence, documentary or testimonial, that demonstrate the claim that Plaintiffs are shareholders of gh. The Court dismisses Plaintiffs' claim under N.J.S.A. 14A:12-7 due to the lack of standing.

**5. Election of remedies**

The Court will not evaluate whether Plaintiffs' claims for damages were barred under the election of remedies doctrine because there is no valid cause of action from which to derive a remedy. Defendants' contention that Plaintiffs cannot both seek a declaration that they were owners of the merged Aequus/gh entity as well as compensatory and consequential damages is rendered moot because the Court has determined that there was no agreement to merge.

16

**NOT FOR PUBLICATION**

## CONCLUSION

In order for an alleged partnership agreement to be found valid, it must meet all of the Fenwick factors. Kozlowski at 171. Plaintiffs do not present sufficient evidence to satisfy all of the Fenwick factors. The Court grants Defendants' motion for partial summary judgment to dismiss Plaintiff's partnership agreement claims with prejudice.

Plaintiffs also do not make an adequate showing that the alleged agreement to merge was a preliminary binding agreement. Plaintiffs fail to provide evidence of elements of intent such as essential terms, partial performance of the agreement, and consistency with earlier dealings between the parties. The Court grants defendants' motion for partial summary judgment to dismiss Plaintiff's merger claims with prejudice.

Plaintiffs' claims for breach of contract of the agreement to merge, breach of the duty of good faith and fair dealing under the partnership agreement, breach of the duty of good faith and fair dealing under the agreement to merge, breach of fiduciary duty under the partnership agreement, breach of duty of loyalty under the partnership agreement, breach of duty of loyalty under the agreement to merge, are dismissed with prejudice by the Court due to the lack of a valid partnership agreement or agreement to merge upon which to base these claims. Plaintiffs' claim for $250,000 in damages under the partnership agreement is also dismissed with prejudice.

According to the New Jersey Oppressed Shareholders Statute, only a director or a shareholder can bring an action under the statute. Because the Court has found that no valid partnership agreement exists between Aequus and gh, Plaintiffs' claim under the New Jersey Oppressed Shareholders Statute is dismissed with prejudice.

17

**NOT FOR PUBLICATION**

                                          **s/William H. Walls**
                                          United States Senior District Judge

**Appearances:**
Mark J. Gross
Greenbaum, Rowe, Smith & Davis LLP
75 Livingston Ave.
Roseland, NJ 07068
        Attorneys for Plaintiffs Aequus Technologies, LLC, Aequus Technologies Corp.,
        Richard Schatzberg and Lemuel Tarshis
Eric I. Abraham
Hill Wallack LLP
202 Carnegie Center
Princeton, New Jersey 08543
        Attorneys for Defendants gh, LLC, David Schleppenbach and Joseph P. Said