NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| AEQUUS TECHNOLOGIES, L.L.C., AEQUUS TECHNOLOGIES CORP., RICHARD SCHATZBERG AND LEMUEL TARSHIS, | : : : : : : : : : : : : : : | OPINION  Civ. No. 03-5139 (WHW) |
| Plaintiffs, |  |  |
| v. |  |  |
| gh, L.L.C., DAVID SCHLEPPENBACH, JOSEPH P. SAID, and ABC CORP., a fictitious entity, |  |  |
| Defendants. |  |  |

**Walls, Senior District Judge**

Defendants gh, L.L.C., David Schleppenbach and Joseph Said ("gh") move to strike the experts' report submitted by plaintiffs Aequus Technologies, L.L.C., Aequus Technologies Corp., Richard Schatzberg and Lemuel Tarshis (collectively "Aequus"). Defendants contend that the experts' report disregards this Court's prior summary judgment ruling and that its conclusions lack factual support. Pursuant to Rule 78.1 of the Local Rules, the motion is decided without oral argument.

**FACTUAL AND PROCEDURAL BACKGROUND**

David Schleppenbach and Joseph Said started gh to provide technological solutions to visually disabled individuals. Richard Schatzberg and Lemuel Tarshis are officers of Aequus Technologies, L.L.C., another company that provides services to the disabled. Aequus and gh

1

Case 2:03-cv-05139-WHW-MCA   Document 105   Filed 01/28/11   Page 2 of 9 PageID: 1736

**NOT FOR PUBLICATION**

began talks concerning a potential collaboration in 2001. Over the course of this relationship, the parties entered into a management contract (the "contract"), a Letter of Intent for Aequus to acquire all of gh's assets, and a Joint Marketing, Sales and Business Development Agreement (the "development agreement"). The development agreement superseded the contract and contained an integration clause and a clause that permitted only written modifications. Aequus contends that it created new product concepts and new intellectual property that were utilized by gh and introduced gh to its customers.

During their association, gh was in the process of repurchasing Technology Sellers' 49% interest in gh but had fallen behind in its payments. Aequus entered into a deposit agreement with Technology Sellers and paid Technology Sellers $250,000 on gh's behalf. While the deposit agreement did not provide for any possible return of this payment to Aequus, it did state that the payment would be credited to Aequus if Aequus purchased Technology Sellers' interest in gh. Aequus and gh did not enter into an agreement concerning this payment. Aequus also made three $5,000 payments to Schleppenbach. There are no written agreements memorializing these payments.

Aequus believed that the two entities had entered into a partnership agreement and had merged; gh did not. After the relationship soured, Aequus brought suit claiming breach of contract, breach of the duty of good faith and fair dealing, misrepresentation, negligent misrepresentation, breach of fiduciary duty, breach of the duty of loyalty, tortious interference with agreements, tortious interference with prospective economic advantage, conversion, unjust enrichment, quantum meruit, violation of the Uniform Fraudulent Transfer Act, violation of the New Jersey Oppressed Shareholder statute and violation of the Uniform Partnership Act. gh brought counterclaims for breach of contract, breach of the duty of good faith and fair dealing,

**NOT FOR PUBLICATION**

fraudulent inducement, negligent misrepresentation, tortious interference with prospective economic advantage and disgorgement.

In 2007, gh moved for partial summary judgment, primarily contending that a partnership had never been legally created and that the two entities had not merged. The Court granted gh's motion. Specifically, the Court found no valid partnership or merger and dismissed Aequus' breach of contract claims concerning the partnership and merger agreements, Aequus' claims for a breach of the duty of good faith and fair dealing under the partnership and merger agreements, Aequus' claims for breach of fiduciary duty and the duty of loyalty under the partnership and merger agreements, Aequus' claim under the New Jersey Oppressed Shareholders' Statute, Aequus' claim under the Uniform Partnership Act, and Aequus' claim for $250,000 in damages under the partnership agreement.

Before the Court's ruling on gh's initial summary judgment motion, Aequus submitted an experts' report from Scott A. Maier, CPA, ABV, JD, ASA and Kyle S. Garcia, CFA, ASA, CBA that calculated Aequus' damages for gh's alleged wrongdoing. In calculating damages, the report assumed that the business relationship between gh and Aequus constituted a partnership under New Jersey law. After the Court determined that a partnership had not been established, Aequus submitted a second experts' report. The second experts' report purports to calculate the total damages owed to the plaintiffs for the surviving claims. The total amount of damages under the remaining claims is $5,870,000.

gh contends that the second experts' report disregards the Court's earlier rulings. gh claims that this Court's dismissal of Aequus' claim for $250,000 under the partnership agreement, and the ruling that no partnership existed and no merger occurred means the only possible damages Aequus could be due would come under the development agreement. As

**NOT FOR PUBLICATION**

Aequus' expert has not estimated damages under the development agreement, gh demands that the report be stricken.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 governs the admission of expert testimony in federal courts. In evaluating expert testimony the court must consider "(1) qualifications-whether the expert is qualified to speak with authority on a particular subject or issue; (2) reliability-whether the expert's methodology is sound and whether his or her opinion is supported by 'good grounds;' and (3) fit-whether there is a relevant 'connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'" Yarchark v. Trek Bicycle Corp., 208 F.Supp.2d 470, 494 (D.N.J. 2002) (quoting In re Paoli R.R. Yard PCG Litig., 35 F.3d 717, 741-43 (3d Cir. 1994)).

The fit requirement relates to the relationship between the expert's testimony and the facts that will be presented to the jury. Federal District Judges are to act as gatekeepers and must determine whether the proposed expert testimony will assist the trier of fact. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 598 (1993). In evaluating fit, the court must determine "whether [the] expert testimony proffered … is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." United States v. Schiff, 602 F.3d 152, 173 (3d Cir. 2010) (quotation omitted).

## DISCUSSION

**References to the $250,000 Payment and Other Expenses**

gh avers that this Court's August 17, 2009, opinion dismissed Aequus' claim for $250,000. Aequus correctly counters that their claim for $250,000 was only dismissed under the partnership agreement. gh's own citation to the record shows as much. ("Plaintiffs' claim for

**NOT FOR PUBLICATION**

$250,000 in damages under the partnership agreement is also dismissed with prejudice." (gh Br. at 10 (citing <u>Aequus Tech., LLC v. gh, LLC</u>, No. 03-5139, 2009 WL 2526697, at * 10 (D.N.J. Aug. 17, 2009)))).

Aequus argues that it has presented other viable claims under which it could recover the $250,000. Aequus' experts included the $250,000 payment in a category of payments it described as payments related to the contract and "other expenses the Plaintiffs paid on behalf of the Partnership," in their original damages calculation. (Df. Ex. F, Mar. 26, 2009, Experts' Report at 12.) In their amended report, Maier and Garcia acknowledge that the Court has dismissed any claims of a partnership but assert that their calculations for damages aside from the value of the partnership from their initial report remain unchanged in light of the Court's rulings. These other damages include the $250,000 payment.

Because the Court held that a partnership did not exist, gh contends that including the $250,000 payment in the damages calculation, where Aequus' experts initially described the payment as one of the "other expenses paid on behalf of the Partnership," disregards this Court's prior ruling. gh also claims that there are no facts that would allow Aequus' experts to find that Aequus could recover the $250,000 payment. Lastly, gh argues that expert testimony is not necessary concerning this payment. While Aequus may be able to recover the $250,000 at trial, any references to the $250,000 in the experts' report will be stricken because expert testimony concerning this payment will not assist the trier of fact.

There is no dispute that Aequus and gh met and contemplated a merger and a partnership. It is also undisputed that Aequus paid Technology Sellers $250,000 on gh's behalf after gh had fallen behind in its payments. gh contends that the money was only a deposit to be credited in Aequus' favour if Aequus ever decided to buy Technology Sellers' interest in gh. Aequus,

**NOT FOR PUBLICATION**

however, contends that gh falsely led it to believe that a partnership had been created and improperly induced it to make payments for gh's benefit.

Maier and Garcia's report deals solely with quantifying damages owed to Aequus *assuming that gh is liable*. The report lists the $250,000 payment as an additional loss without providing any analysis. In addition to the $250,000 payment, four other items listed as "other expenses" are included in the experts' report. These payments include money owed under the contract, payments made to Schleppenbach, and consulting and lobbying fees. These items are similarly included in the damages calculation without evaluation.

The determination of any damages owed to Aequus concerning these "other expenses" does not lie beyond a juror's common experience. Etienne v. United Corp, No. 99-205, 2001 WL 1568598, at *7 (D.V.I. Oct. 15, 2001) (finding expert testimony unnecessary where, among other things, the knowledge utilized was within the common knowledge of any juror); c.f. United States v. Llera Plaza, 188 F.Supp.2d 549, 573 (E.D. Pa. 2002) (admitting expert testimony because its subject matter did not "come within the common experience of all men of common education in the ordinary walks of life."). Aequus contends that they are owed for certain payments they made for gh's benefit. The assertion that Aequus is owed money for these payments, however, is not based on any specialized knowledge or expertise that the average juror lacks; no specialized calculations are required to quantify the damages. Expert testimony concerning the payments is unnecessary and will be stricken from the experts' report.

**Remainder of the Experts' Report**

While both parties fail to adequately put forth arguments concerning the remainder of the experts' report, choosing to focus primarily on the $250,000 payment instead, gh contends that the entire experts' report should be stricken because it fails to calculate damages under the

6

development agreement. gh does not challenge the experts' qualifications or methodology. Instead, gh claims that the development agreement was the only contract in effect and that it defined all of the rights and responsibilities of the parties. Because the development agreement has an integration clause and a clause that permits only written amendments, gh contends that nothing that may have happened outside of the development agreement could form a valid basis for damages.

Aequus contends that the supplemental experts' report accurately calculates the damages it should receive if gh is found liable. Aequus claims that the integration clause does not bar damages that are the result of new understandings between the parties that occurred after the development agreement was executed. Aequus also contends that the experts' report quantifies damages under theories of liability apart from breach of contract.

gh's argument does not consider all of Aequus' remaining claims. While Aequus has brought a claim for breach of contract, it has brought tort claims as well. Specifically, Aequus alleges misrepresentation, negligent misrepresentation, tortious interference, conversion, unjust enrichment, a claim under quantum meruit, and a violation of the Uniform Fraudulent Transfer Act. Aside from asserting that the development agreement reflected the totality of the agreements between the parties, gh does not address why Aequus could not recover under these claims and does not contend that the report inaccurately calculates damages under these theories of liability.

The terms of the development agreement allowed Aequus to enter into contracts for the development or sale of gh's products with non-federal government entities, while allowing gh to enter into similar contracts with federal agencies. Aequus contends that in addition to entering into the development agreement, gh led it to believe that they had entered into a partnership and

7

**NOT FOR PUBLICATION**

induced it to make payments and perform services not contemplated by the development agreement for gh's benefit. Aequus also alleges injuries due its reliance on gh's misrepresentations. Maier and Garcia's report calculates the benefits that gh derived, and the damage that Aequus suffered, from these misrepresentations.

A valid integration clause in a contract precludes evidence of alleged negotiations, conversations, and agreements relating to the terms contained in the contract itself. Panaccione v. Holowiak, 2008 WL 4876577, at *7 (N.J. Super. App. Div. Nov. 12, 2008). An integration clause does not restrict claims relating to other matters. The presence of an integration clause in the development agreement does not mean that gh did not commit torts. Because Aequus alleges that gh improperly induced Aequus to make payments unrelated to the sale of gh's products, the development agreement and its integration clause are not be implicated in Aequus' tort claims.

Maier and Garcia rely upon facts from the amended complaint, the answer to the amended complaint, David Schleppenbach's declaration and gh's answers to interrogatories in reaching their conclusions. In addition to these facts, Maier and Garcia utilized financial information from both gh and Aequus including tax returns, profit and loss statements, and other financial statements. With this information Maier and Garcia employed the "Income Approach" and the discounted future returns method to calculate the damages owed to Aequus. Their conclusions are based on sufficient facts and data because "they could reliably flow 'from the facts known to the expert and the methodology used.'" Pager v. Gen. Elec. Co., No. 08-1482, 2010 WL 5393857, at * 4 (M.D. Pa. Dec. 22, 2010) (internal quotation omitted). The remainder of the report will not be stricken.

## CONCLUSION

The Court finds that Maier and Garcia's expert testimony concerning the "other

**NOT FOR PUBLICATION**

expenses" Aequus paid is inadmissible because expert testimony on the subject is unnecessary. The remainder of Maier and Garcia's report, however, is admissible at trial for the purpose of estimating the amount of damages suffered by plaintiffs as a result of gh's actions. If plaintiffs are able to establish liability, Maier and Garcia's testimony may be helpful to the jury to understand the extent of plaintiffs' damages.

**s/ William H. Walls**
United States Senior District Judge
