**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| AEQUUS TECHNOLOGIES, L.L.C., AEQUUS TECHNOLOGIES CORP., RICHARD SCHATZBERG AND LEMUEL TARSHIS, | : : : : : : | **OPINION** Civ. No. 03-5139 (WHW) |
| Plaintiffs, | : : |  |
| v. | : : |  |
| gh, L.L.C., DAVID SCHLEPPENBACH, JOSEPH P. SAID, and ABC CORP., a fictitious entity, | : : : |  |
| Defendants. |  |  |

**Walls, Senior District Judge**

Plaintiffs Aequus Technologies L.L.C., Aequus Technologies Corp., Richard Schatzberg and Lemuel Tarshis have brought suit against Defendants gh, L.L.C. ("gh"), David Schleppenbach and Joseph Said. Defendants move for summary judgment. Pursuant to Rule 78.1 of the Local Rules, the motion is decided without oral argument. The motion is granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

David Schleppenbach and Joseph Said started gh to provide technological solutions to visually disabled individuals. Richard Schatzberg and Lemuel Tarshis are officers of Aequus Technologies, L.L.C., ("Aequus") another company that provides services to the disabled. Aequus and gh began talks concerning a potential collaboration in 2001. Over the course of this

1

**NOT FOR PUBLICATION**

relationship, the parties entered into a management contract (the "contract"), a Letter of Intent for Aequus to acquire all of gh's assets, and a Joint Marketing, Sales and Business Development Agreement (the "development agreement"). The development agreement superseded the contract and contained an integration clause and a clause that permitted only written modifications. Aequus contends that it created new product concepts and new intellectual property that were utilized by gh and introduced gh to its customers.

During their association, gh was in the process of repurchasing Technology Sellers' 49% interest in gh but had fallen behind in its payments. Aequus entered into a deposit agreement with Technology Sellers and paid Technology Sellers $250,000 on gh's behalf. While the deposit agreement did not provide for any possible return of this payment to Aequus, it did state that the payment would be credited to Aequus if Aequus ever purchased Technology Sellers' interest in gh. Aequus and gh did not enter into an agreement concerning this payment.

Aequus believed that the two entities had entered into a partnership agreement and had merged; gh did not. After the relationship soured, Aequus brought suit claiming breach of contract, breach of the duty of good faith and fair dealing, misrepresentation, negligent misrepresentation, breach of fiduciary duty, breach of the duty of loyalty, tortious interference with agreements, tortious interference with prospective economic advantage, conversion, unjust enrichment, quantum meruit, violation of the Uniform Fraudulent Transfer Act, violation of the New Jersey Oppressed Shareholder Statute and violation of the Uniform Partnership Act. gh brought counterclaims for breach of contract, breach of the duty of good faith and fair dealing, fraudulent inducement, negligent misrepresentation, tortious interference with prospective economic advantage and disgorgement.

**NOT FOR PUBLICATION**

In 2007, gh moved for partial summary judgment, primarily contending that a partnership had never been legally created and that the two entities had not merged. The Court granted gh's motion. Specifically, the Court found no valid partnership or merger and dismissed Aequus' breach of contract claims concerning the partnership and merger agreements, Aequus' claims for a breach of the duty of good faith and fair dealing under the partnership and merger agreements, Aequus' claims for breach of fiduciary duty and the duty of loyalty under the partnership and merger agreements, Aequus' claim under the New Jersey Oppressed Shareholders' Statute, Aequus' claim under the Uniform Partnership Act, and Aequus' claim for $250,000 in damages under the partnership agreement. Defendants now move for summary judgment on all remaining claims.

## STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248. The moving party must show that the non-moving party has failed to "set forth," by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial." See Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Fed. R. Civ. P. 56(e)).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" in question.

**NOT FOR PUBLICATION**

Scott, 550 U.S. at 380 (citing Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue of fact for trial. See Anderson, 477 U.S. at 249. In so doing, the court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002). To survive a motion for summary judgment, a non-movant must present more than a mere "scintilla of evidence" in his favor. Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for trial. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).

## DISCUSSION

### I. Contract and Good Faith and Fair Dealing Claims

To properly make out a breach of contract claim Aequus must allege: (1) a valid contract, (2) breach of that contract, and (3) damages resulting from that breach. AT&T Credit Corp. v. Zurich Data Corp., 37 F. Supp. 2d 367, 370 (D.N.J. 1990). Every contract in New Jersey has an implied covenant of good faith and fair dealing and "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." R.J. Gaydos Ins. Agency, Inc. v. Nat. Consumer Ins. Co., 773 A.2d 1132, 1146 (N.J. 2001).

#### a. The Contract

The parties agree that gh and Aequus entered into the contract, which was in effect from June 15, 2002, through June 14, 2003. (Defs. Statement of Material Facts ¶ 1; Pls. Response to Statement of Material Facts ¶ 1.) The parties also agree that the development agreement was entered into on May 1, 2003, and that this agreement superseded the contract. (Defs. Statement

**NOT FOR PUBLICATION**

of Material Facts ¶ 2; Pls. Response to Material Facts ¶ 2.)

gh claims that because the contract was superseded by the development agreement, there could not have been a breach of the contract. While gh does no more than state that the contract was superseded, in essence, gh claims that the development agreement was a novation. "Unlike a modification which leaves the original contract in place, a novation substitutes a new contract and extinguishes the old one. The elements of a novation are: (1) a previously valid contract; (2) an agreement to make a new contract; (3) a valid new contract; and (4) an intent to extinguish the old contract." Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Taxation, 999 A.2d 489, 497 (N.J. Super. App. Div. 2010) (citations omitted).

The first element of novation is met under the present facts because the contract was valid. The second and third elements of novation have been met because the development agreement was a valid contract that the parties entered. And both parties agree that the development agreement superseded the contract. (Dfs. Br., at 3; Pls. Br., at 4.) Indeed, the development agreement stated as much: "This Agreement contains the entire understanding of the parties and supersedes all previous verbal and written agreements." (Ex. D to Defs. Mot. for Summary Judgment).

In opposition papers, the plaintiffs fail to address directly their claim that gh breached the contract. Instead, noting that "there is ample evidence in the record to permit a reasonable fact finder to determine that gh breached the [development agreement] and numerous subsequent agreements between the parties." (Pls. Br., at 19.) Aequus does allege that the parties entered into the development agreement because gh was unable to make certain payments due under the contract. However, because a novation extinguishes the underlying debt, see Michael J. Benenson Assocs., Inc. v. Orthopedic Network of New Jersey, 54 F. App'x 33, 36 (3d Cir.

5

**NOT FOR PUBLICATION**

2002), Aequus cannot sustain a claim for breach of the contract. See also T&N v. Pennsylvania Ins. Guar. Ass'n, 44 F.3d 174, 186 (3d Cir. 1994) ("When the parties to a contract enter into a new agreement that expressly supersedes the previous agreement, the previous agreement is extinguished, thereby reducing the remedy for breach to a suit on the new agreement.") (citation omitted)). There is no dispute of material fact; the claim for breach of the contract is dismissed.

A party may obtain relief for a breach of the implied covenant of good faith and fair dealing "if its reasonable expectations are destroyed when [the other party] acts with ill motives and without any legitimate purpose." Deb Assocs. v. Forever Young Med. Daycare, LLC, 2011 WL 382574, at *3 (N.J. Super. App. Div. Feb. 8, 2011). "The covenant of good faith and fair dealing has been applied in three general ways. First, it permits the inclusion of terms and conditions which have not been expressly set forth in the written contract. Second, it allows redress for the bad faith performance of an agreement even when the defendant has not breached any express term. Third, it permits inquiry into a party's exercise of discretion expressly granted by a contract's terms." Maksin Mgmt. Corp. v. Roy A. Rapp, Inc., 2008 WL 3165465, at *7 (N.J. Super. App. Div. Aug. 8, 2008) (quotations omitted).

None of these three categories is present here. Aequus only contends that by breaching the contract, gh also breached the implied covenant of good faith and fair dealing because it "willfully, wantonly and intentionally terminat[ed] the Contract." (Amend. Compl. ¶ 28.) "The implied covenant cause of action is not intended to provide a plaintiff with additional damages for the bad faith breach of an express term of a contract." Kurnik v. Cooper Health Sys., 2008 WL 2829963, at *22 (N.J. Super. App. Div. July 24, 2008). Because the only breach of the implied covenant of good faith and fair dealing that Aequus alleges is gh's breach of the contract, this claim is dismissed. See Kassa v. Johnson, 2009 WL 1658528, at *5 (N.J. Super.

**NOT FOR PUBLICATION**

App. Div. June 16, 2008) (allowing claims for breach of the duty of good faith and fair dealing to proceed only "to the extent that claim encompasses acts and damages beyond those sought for breach of contract.").

### b. The Development Agreement

gh contends that Aequus' breach of contract claim concerning the development agreement must be dismissed because Aequus' expert report does not identify damages resulting from the breach. Aequus does not respond to this argument and instead states that a "determination as to which party breached the Agreement is one of the central issues in this case, and yet the parties heavily dispute the facts leading up to the termination." (Pls. Br., at 21.)

By the terms of the development agreement, which was to last at least three years, Aequus was to receive 25% of revenue over $4,126,000. gh contends that Aequus never generated sales anywhere close to this threshold before the development agreement was terminated. (Amend. Counterclaims ¶ 22.) Aequus does not contest this. While gh claims that Aequus' expert report does not quantify damages under the development agreement, the report actually predicts revenue from the gh/Aequus collaboration well in excess of $4,126,000 for each of the three years after Aequus' expected purchase of gh's assets. Aequus has adequately alleged damages due to gh's breach of the development agreement. Summary judgment on this claim is denied.

Similar to Aequus' good faith and fair dealing claim concerning the contract, Aequus alleges that gh breached the duty of good faith and fair dealing with respect to the development agreement when it breached it.[1] This claim is similarly dismissed.

---

[1] Aequus also contends that the parties entered into additional contracts subsequent to the development agreement, and that gh has breached these agreements as well. As gh points out, however, nowhere in the complaint does Aequus mention oral agreements that took place after the development agreement was executed or describe the

7

**NOT FOR PUBLICATION**

    **II.**    **Misrepresentation and Negligent Misrepresentation Claims**

"A cause of action in fraud 'requires the satisfaction of five elements: a material misrepresentation by the defendant of a presently existing fact or past fact; knowledge or belief by the defendant of its falsity; an intent that the plaintiff rely on the statement; reasonable reliance by the plaintiff; and resulting damages to the plaintiff.'" Marino v. Marino, 981 A.2d 855, 871 (N.J. 2009) (citing Liberty Mut. Ins. Co. v. Land, 892 A.2d 1240, 1247 (N.J. 2006)). Similarly, "[a] cause of action for negligent misrepresentation may exist when a party negligently provides false information." Karu v. Feldman, 574 A.2d 420, 425 (N.J. 1990).

gh identifies two alleged misrepresentations that Aequus complains of: (1) that gh would faithfully comply with the contract and the development agreement, and (2) that it was necessary for Aequus to make payments to certain third parties and to refrain from collecting money owed from gh. gh contends that summary judgment is appropriate as to Aequus' misrepresentation claims because the first potential misrepresentation relates to a future promise. gh also argues that because it addresses an implied duty found in every contract, it is really a contract claim. gh argues that the second potential misrepresentation cannot serve as a basis for misrepresentation claims because the development agreement contained an integration clause and the contract constituted the entire understanding between the parties.

Aequus claims that gh fraudulently induced it to enter into the development agreement and as such, it is not a contract claim, but one of misrepresentation. Aequus contends that gh falsely stated that it would honor the promises made in the development agreement in an effort to induce Aequus to enter into the development agreement, while knowing, at the time the development agreement was executed, that it did not intend to honor its promises. Aequus relies

---

terms of these alleged agreements. Because Aequus did not plead anything about these alleged contracts, this claim will not be considered.

**NOT FOR PUBLICATION**

on the fact that gh "unilaterally terminated the agreement only four months after its execution" as evidence that gh did not intend to fulfill its promises when the development agreement was signed. (Pls. Opp. Br., at 28.)

While "[a] representation of the maker's own intention to do or not do a particular thing is fraudulent if he does not have that intention," "[t]he intention of the promisor not to perform an enforceable . . . agreement cannot be established solely by proof of its nonperformance, nor does his failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into." In re Tutu Water Wells Contamination Litig., 78 F. Supp. 2d 456, 462 (D.V.I. 1999) (internal citation and quotation marks omitted). Because Aequus provides nothing more than the breach of the development agreement a number of months after its execution as proof that gh falsely represented that it would honor its promises, there is no genuine issue of material fact concerning this potential misrepresentation. Aequus also notes that the parties entered into the development agreement after gh was unable to make certain payments due under the contract. Because Aequus does not provide any evidence that this was an untrue description of gh's finances, this does not support a misrepresentation claim concerning the development agreement either.

Aequus also contends that it was induced to enter into the deposit agreement with Technology Sellers and to pay hundreds of thousands of dollars for gh's expenses by gh's misrepresentations that it intended to move forward with the merger and that a partnership had been formed. Concerning gh's intention to move forward with the merger, similar to Aequus' argument concerning the development agreement, plaintiffs have failed to put forth any evidence that gh's statement concerning moving forward with the merger was false. That no merger was consummated does not demonstrate that at the time gh asked Aequus to make certain monetary

9

outlays, gh did not intend to merge.

The only remaining potential basis for misrepresentations is gh's statements that a partnership had been formed.  gh contends that Aequus cannot show that it reasonably relied upon gh's statements that the two entities had formed a partnership.[2]  gh contends that because this Court found that no partnership agreement existed, there was no manifest intent to form a partnership, and without this, Aequus could not have reasonably relied on anything gh said or did.  gh is incorrect.  While this Court did find that the majority of the factors used in determining whether a partnership existed had not been established, it also found that the evidence concerning the intent to form a partnership "favors the existence of a partnership agreement."  Aequus Tech., LLC v. gh, LLC, No. 03-5139, 2009 WL 2526697, at *5 (D.N.J. Aug. 17, 2009).

Aequus has advanced evidence that gh told it that they had formed a partnership, that it relied on these statements, and that it suffered damages.  gh itself has consistently argued that it did not ever believe that a partnership had been formed.   There is a genuine dispute of material fact and Aequus' misrepresentation claims concerning these statements may proceed.

### III.     Tortious Interference Claims

To make a claim for tortious interference with an existing contract, the plaintiff must establish "(1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." Staubach Co. of Pennsylvania v. Galloway Auto. LLC, 2010 WL 5376868, at *3 (N.J. Super. App. Div. Dec. 3, 2010).  "An action for tortious interference with a prospective business relation protects the right

---

[2] gh also contends that Aequus' misrepresentation claims should be dismissed because they rely on gh's statements to third parties that the two had formed a partnership.  Because Aequus also asserts that gh made similar misrepresentations to Aequus, this challenge is not dispositive.

10

'to pursue one's business, calling or occupation free from undue influence or molestation.' What is actionable is '[t]he luring away, by devious, improper and unrighteous means, of the customer of another.'" Printing Mart-Morristown v. Sharp Elecs. Corp., 563 A.2d 31, 36 (N.J. 1989) (quoting Louis Kamm, Inc. v. Flink, 175 A. 62, 66 (N.J. Err. & App. 1934)). To succeed on such a claim, the "plaintiff must show that it had a reasonable expectation of economic advantage that was lost as a direct result of the defendants' malicious interference, and that it suffered losses thereby." Lamorte Burns & Co., Inc. v. Walters, 770 A.2d 1158, 1158 (N.J. 2001) (citation omitted).

gh claims that Aequus cannot make out any tortious interference claim because it has not identified any contracts or business opportunities with which gh interfered. gh also notes, that as a party to both the contract and the development agreement, gh may not be sued for tortious interference with those contracts.

Aequus counters that it does not allege interference with the contract or the development agreement, but claims that gh interfered with its contracts with certain customers. Aequus contends that it secured business from the New York State Department of Education ("NYSDE") and the Social Security Administration ("SSA"), but after gh's unilateral termination of the contract, gh told Aequus to cease contacting "gh's" clients. Aequus contends that these actions were wrongful because the development agreement specifically stated that Aequus would enter into the agreements with these parties. In essence, Aequus contends that gh lured away its customers by improper means.

gh argues that its actions did not disrupt any relationship that Aequus might have had with the NYSDE and the SSA because Aequus would not have been able to serve these parties because it did not have its own products. gh further contends that because the customers were

11

**NOT FOR PUBLICATION**

obtained for the benefit of the joint-venture between plaintiffs and defendants, gh could not have interfered with its own contract.

gh's arguments are misplaced. While it is true that "where a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law," Printing Mart-Morristown v. Sharp Elecs. Corp., 563 A.2d 31, 38 (N.J. 1989), gh does not allege that it was a party to the contract. While gh claims that it would have received some benefit from the contract, the parties to the contracts at issue were Aequus on the one hand, and the NYSDE and the SSA on the other. Because gh was not a party to either contract, this exception does not apply.

The Court is not aware of any published New Jersey decision concerning the issue of whether a third-party beneficiary to a contract cannot, as a matter of law, have interfered with the contract because it was in effect a party.[3] The Court, however, need not decide this issue because gh has not demonstrated that it was a third party beneficiary to the contracts. "The standard applied by New Jersey courts in determining third-party beneficiary status is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts." Kern v. Huettl, 2009 WL 2461074, at *5 (N.J. Super. App. Div. Aug. 13, 2009) (quoting Werrmann v. Aratusa, Ltd., 630 A.2d 302, 305 (N.J. Super. App. Div. 1993)). The key is the contractual intent to recognize a right to performance in a third party. Broadway Maint. Corp. v. Rutgers, 447 A.2d 906 (N.J. 1982). Because neither party provides the actual contracts at issue, it is unclear whether gh was designated as a third party beneficiary to either contract, or whether Aequus on the one hand, and the Social Security Administration and the

---

[3] While courts in Georgia and Florida treat a third party beneficiary as a party to a contract who cannot be sued for tortious interference, see BMC-The Benchmark Mgmt. Co. v. Ceebraid-Signal Corp., 2007 WL 2126272 (N.D. Ga. July 23, 2007); White v. School Bd. of Hillsborough Cnty., 636 F. Supp. 2d 1272 (M.D. Fla. 2007), California has found that nonparties with a direct interest in a contract are not immune from liability for tortious interference. Consortium Info. Servs., Inc. v. Experian Info. Solutions, Inc., 2007 WL 2484109 (Cal. App. 4th Dist. Sept. 5, 2007).

**NOT FOR PUBLICATION**

New York Department of Education on the other hand, intended gh to be a beneficiary.

gh's argument that no interference existed because Aequus had no products of its own is similarly misplaced.  Even if Aequus does not have any products of its own, it could still be able to act as a liaison between a manufacturer and purchaser of goods, similar to the role it served with gh.  gh has not produced the contracts in question and has provided nothing more than its assertion that Aequus could not have fulfilled its contracts with the SSA or the NYSDE.

gh further claims that Aequus cannot make out a claim for tortious interference because it has not alleged any damages as a result of gh's actions.  Aequus' expert report, however, has calculated damages that Aequus has sustained due to gh continuing to "use, for their sole benefit . . . relationships that were developed by the Plaintiffs at their own cost." (Ex. F. to Defs. Mot. to Strike Expert Report.)  Because genuine issues of material fact remain as to whether gh has tortiously interfered with Aequus' contracts, gh's request for summary judgment on issue is denied.

Aequus, however, has not alleged, nor provided any support for its claim that gh interfered with any *prospective* business relations.   Although the alleged right need not be an enforceable contract, there must be allegations of fact giving rise to some "reasonable expectation of economic advantage." Harris v. Perl, 197 A.2d 359, 363 (N.J. 1964).  Here, aside from stating in the amended complaint that gh diverted business opportunities from Aequus, and violated the contract and the development agreement, Aequus does not address how gh purportedly interfered with any of Aequus' future business opportunities.  Aequus has not provided evidence of the prospective economic advantage it expected and the only potential interference by gh, is a statement by gh that Aequus not contact "gh's" clients any longer.  Because Aequus has not set forth specific facts showing what business opportunities gh allegedly

13

**NOT FOR PUBLICATION**

meddled with or how, Aequus has not presented a genuine issue for trial. Its claim for tortious interference with prospective business is dismissed.

### IV. Conversion Claim

"The crux of conversion is wrongful exercise of dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property," but "[t]he elements of good faith, intent or negligence do not play a part in an action for damages in conversion." Chicago Title Ins. Co. v. Ellis, 978 A.2d 281, 288 (N.J. Super. App. Div. 2009) (quotation omitted).

gh claims that Aequus has failed to state a claim for conversion because it admitted that it did not have any products of intellectual property during their relationship. During a deposition, Schatzberg admitted that Aequus did not have any products when the two companies began working together. He further admitted that he did not recall any new product concepts that Aequus put together during its relationship with gh.

Aequus argues that aside from actual products, it formulated business plans, an employee manual and marketing strategies.[4] It alleges that gh converted this intellectual property without Aequus' consent and without providing any compensation. gh counters that any such intellectual property was developed for the alleged partnership between gh and Aequus; if Aequus intended for gh to use this intellectual property, it cannot have converted it. gh is mistaken. "Where the possession of a person remains rightful until transformed into a wrongful detention by a demand

---

[4] Aequus also claims that it made certain payments on gh's behalf and points to the $250,000 payment to Technology Sellers on gh's behalf as a basis for conversion. Aequus and Technology Sellers entered into an agreement; Aequus paid $250,000 on gh's behalf for the repurchase of Technology Sellers' stake in gh. If Aequus were to later purchase a stake in gh, this payment would be credited in its favor. Because Aequus does not contend that it has tried to purchase any portion of gh only to have this payment not credited, gh has not exercised wrongful dominion over any of Aequus' property concerning this payment. This payment may not be used as a basis for the conversion claim.

and refusal of delivery, the demand and refusal may constitute a conversion in itself." Zelano v. Zelano, 2005 WL 2008328, at *2 (N.J. Super. Ch. Aug. 11, 2005) (citing 89 C.J.S. Trover and Conversion § 61).  While Aequus may have permitted gh to use this intellectual property while they were affiliated, it claims to have withdrawn its permission after the termination of the relationship.

gh further claims that Aequus cannot make out a claim for conversion because it has not alleged any damages as a result of gh's actions.  Aequus' expert report, however, has calculated damages that Aequus has sustained due to gh continuing to "use, for their sole benefit, the intellectual property concepts, business plans, marketing strategies and relationships that were developed by the Plaintiffs at their own cost."  (Ex. F. to Defs. Mot. to Strike Expert Report.)  Because genuine issues of material fact remain as to whether gh has converted any of Aequus' property, gh's request for summary judgment on this issue is denied.

### V.     Unjust Enrichment Claim and Quantum Meruit Claim

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." Smith v. Vanguard Dealer Servs., LLC, 2010 WL 5376316, at *4 (N.J. Super. App. Div. Dec. 21, 2010) (quoting VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 554 (N.J. 1994)).  Quantum meruit, "which literally means as much as is deserved, is a remedy that rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.   Thus, we strive to apply the equitable remedy of quantum meruit only when one party has conferred a benefit on another, and the circumstances are such that to deny recovery would be unjust." Kaplan v. Twp. of Old Bridge, 2010 WL 3517036, at *2 (N.J. Super. App. Div. Sept. 7, 2010.)  To recover under a theory of quantum meruit, a plaintiff must establish: "(1) the performance of services in good

**NOT FOR PUBLICATION**

faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Id.

gh claims that Aequus may not bring claims in quantum meruit or unjust enrichment because an express contract exists that encapsulates their responsibilities. Because "it has long been recognized that the existence of an express contract excludes the awarding of relief regarding the same subject matter based on quantum meruit," Kas Oriental Rugs, Inc. v. Ellman, 926 A.2d 287, 392 (N.J. Super. App. Div. 2007), gh contends that the existence of the development agreement forecloses Aequus from bringing suit under these theories.

Plaintiffs respond by arguing that they have evidence to support the elements of both claims. They argue that Schatzberg and Tarshis performed services in good faith for gh, gh accepted these services, and Schatzberg and Tarshis, who were named CEO and COO respectively, expected compensation for their actions. Aequus argues that its $250,000 payment to Technology Sellers, other payments, and gh's use of Aequus' intellectual property support its quantum meruit and unjust enrichment claims. gh responds that at his deposition, Schatzberg could not recall any new product concepts that Aequus had put together during its relationship with gh, and thus, gh was not unjustly enriched.

While the development agreement contains an integration clause, this only establishes the rights and responsibilities of the parties concerning the subject matter of the development agreement because a valid integration clause only precludes evidence of alleged negotiations, conversations, and agreements relating to the terms contained in the contract itself. Panaccione v. Holowiak, 2008 WL 4876577, at *7 (N.J. Super. App. Div. Nov. 12, 2008). An integration clause does not restrict claims relating to other matters.

**NOT FOR PUBLICATION**

The terms of the development agreement allowed Aequus to enter into contracts for the development or sale of gh's products with non-federal government entities, while allowing gh to enter into similar contracts with federal agencies. The presence of an integration clause in the development agreement does not foreclose Aequus' unjust enrichment and quantum meruit claims. Because Aequus alleges that gh improperly induced Aequus to make payments unrelated to the sale of gh's products, the development agreement and its integration clause are not implicated in these claims. Because a genuine issue of material fact remains as to whether gh has unjustly profited from Aequus' actions, summary judgment as to these claims is not warranted.

## VI.     Uniform Fraudulent Transfer Act Claim

Under the Uniform Fraudulent Transfer Act:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

N.J.S.A. 25:2-27(a).

To make out a claim under this statute the plaintiff must establish that it is a creditor, that its debtor put assets beyond its reach which otherwise would have been available, and that the debtor acted with the intent to defraud, delay or hinder the creditor. Gilchinsky v. Nat'l Westminster Bank N.J., 732 A.2d 482, 489 (N.J. 1999).

At no point does Aequus evidence that gh has made any transfers of money or incurred any obligations at all. While plaintiffs plead in their complaint that the defendants participated in the fraudulent conveyance of the assets and property of gh,

they do not allege any evidence concerning these alleged conveyances. There is no indication that gh has sold anything to anyone, let along for the purpose of hiding money from Aequus. A rational fact finder considering the available evidence presented, viewed even in the light most favorable to Aequus, could not find that gh violated the Uniform Fraudulent Transfer Act. This claim is dismissed.

## CONCLUSION

For the foregoing reasons, it is on this 29th day of March, 2011,

**ORDERED** that gh's motion for summary judgment is DENIED as to Aequus' breach of contract claim concerning the development agreement, Aequus' misrepresentation and negligent misrepresentation claims, Aequus' claim for tortious interference with existing contracts, Aequus' claim for conversion, and Aequus' unjust enrichment and quantum meruit claims;

**IT IS FURTHER ORDERED** that gh's motion for summary judgment is GRANTED as to Aequus' breach of contract claim concerning the contract, Aequus' breach of the duty good faith and fair dealing concerning the contract and the development agreement, Aequus' claim for tortious interference with business advantage, and the claim under the Uniform Fraudulent Transfer Act. These claims are dismissed with prejudice.

**s/ William H. Walls**
United States Senior District Judge
